The question before the court is whether the plaintiff-appellant's declaration states a cause of action.
The gravamen of the plaintiff's alleged cause of action must be gathered from the following allegations of the declaration, to-wit:
"The defendant Florida Power Light Company was a public utilities corporation and was possessed of a public franchise which permitted and required it to furnish to those members of the public in Dade County, Florida, desiring it, electrical energy at rates fixed and prescribed by law, and the defendant was engaged in the business of furnishing such electrical energy to said members of the public of Dade County, Florida, for which it was paid a sum of money in accordance with the prescribed rates. On said date the plaintiffs were engaged in the business of purchasing meats and perishable foods for purposes of resale and, in order to preserve and protect the meats purchased by the plaintiffs for such purpose, they constructed on the premises located at No. 1101 N.W. 22nd Street, Miami, Florida, storage rooms and a storage plant in which they intended to store meat purchased by them which was to be resold. The said storage plant constructed by the plaintiffs was equipped with new electrical machinery and motors which were to be employed and utilized to chill the temperature in the storage rooms to a sufficiently low degree as to insure the preservation and protection of the meats stored by plaintiffs therein. The plaintiffs requested the defendant to furnish to them sufficient electrical energy to operate and maintain the plaintiffs' refrigeration plant and the defendant agreed on said date so to do. The said request was made in writing upon the usual and normal application of the Florida Power Light Company and was in words and figures as follows: `The undersigned requests Florida Power Light Company to render electric and/or gas service as set forth in this contract and agrees in consideration thereof to receive from and pay Florida Power Light Company for all electric power, energy and/or gas required on the premises at the address above written and at subsequent addresses designated by the undersigned in accordance with said company's present or future rates, rules and regulations applicable to such service, for so long as the undersigned occupies or controls said premises and requires electrical power, energy and/or gas thereon, but not for longer than five (5) years from the date hereof unless continued for a like period or periods by the continued rendition of service and use thereof beyond the expiration date of any such period. The undersigned hereby grants to the company, and without cost to it, all easements over the premises necessary *Page 662 
for the rendering of service hereunder', and the said application was orally accepted by the Florida Power Light Company and the said company orally agreed to furnish the electric energy required as aforesaid. The machinery employed by the plaintiffs was of ample capacity to maintain such a low degree of temperature in said cooling plant and storage rooms as would fully protect and preserve the meats to be stored therein. Before connecting the electrical energy under said agreement, the defendant inspected the machinery to be employed by the plaintiffs and at the time it connected the current to said machinery under said application and agreement as aforesaid, the said defendant knew the purpose for which said electrical energy was to be utilized, and it knew the nature and character of the machinery that plaintiffs employed to accomplish the chilled temperature necessary to preserve and protect the meats to be stored in said storage room. The defendant, at the time it undertook and agreed to furnish said electrical energy, knew that the machinery employed by the plaintiffs required 220 voltage of electrical energy in order for it to operate efficiently and it knew that when said voltage of electrical energy was supplied to said machinery the said machinery would sufficiently chill the temperature as to protect the meats stored in said storage room, and the defendant also knew that, if the voltage of electrical energy to be supplied by it were permitted to fall below 200, the said machinery would operate with such inefficiency that the storage rooms would not be chilled sufficiently to preserve and protect the meats stored therein. The defendant by its agreement undertook to furnish said voltage required and the plaintiffs agreed to pay the prescribed rates for said electrical energy. Thereafter, the defendant connected its lines, wires or conduits with the machinery of the plaintiffs and commenced to furnish the said electrical energy. After an inspection of the operation of said machinery, it was found that the machinery chilled the storage rooms to a point of 13° below zero when supplied with the agreed electrical energy of 220 voltage and said degree of temperature was sufficiently low to adequately protect and preserve the meats to be stored in said storage rooms. After a test operation of said storage rooms and after it was found that the said machinery chilled the temperature of said storage rooms to 13° below zero when furnished with electrical energy of 220 volts, the plaintiffs stored in said storage rooms 100,000 pounds of prime grade A meat. On or about, to wit, the 1st day of December, 1946, the defendant failed to furnish electrical energy of a voltage in excess of 200 volts, as required as aforesaid, and, as a direct and proximate result of the defendant's failure to furnish said electrical energy of a voltage in excess of 200 volts, the machinery utilized by the plaintiffs as aforesaid was unable to chill the storage rooms to a sufficiently low temperature to protect and preserve said meat and without any opportunity on the part of the plaintiffs to protect themselves from such failure of the defendant as aforesaid, the temperature in said storage rooms rose to a point where the said meats spoiled and became unfit for human consumption."
It is my conclusion that the declaration, although not a suitable model, does not fail to state a cause of action and that the judgment appealed should be reversed.
CHAPMAN, J., concurs.